IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS
APPELLATE DIVISION

| | | |
|---|---|---|
| MARIAN ALDAN-PIERCE, | ) | Civil Appeal No. 86-9030 |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| LEOCADIO C. MAFNAS, | ) | DISSENT |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

MIYAMOTO, District Judge[1]

The undersigned disagrees with the decision of the other two judges of this appellate panel to affirm the trial court's granting of plaintiff's motion for summary judgment.

At the outset, it should be noted that this is a case of paramount importance to persons of Northern Marianas descent since the case involves the constitutionality of the practice in the Commonwealth of the Northern Mariana Islands, hereinafter referred to as the "Commonwealth," wherein persons of non-Northern Marianas descent acquired what may be considered permanent long-term interests in real estate in the Commonwealth contrary to

---

[1] The Honorable Richard I Miyamoto, Associate Justice, Trust Territory High Court, Saipan, CM, sitting by designation.

341

the provisions of the Constitution of the Northern Mariana Islands, hereinafter referred to as the "Constitution."

Section 1 of Article XII of the Constitution provides that "[t]he acquisition of permanent and long-term interests in real property within the Commonwealth shall be restricted to persons of Northern Marianas descent."

Section 2 of Article XII of the Constitution provides, in part, that "[t]he term acquisition used in Section 1 includes acquisition by sale, lease, gift, inheritance or other means."

The original Section 3 of Article XII of the Constitution executed on December 5, 1976, provides, in part, that "[t]he term permanent and long-term interests in real property used in Section 1 includes freehold interests and leasehold interests of more than forty years including renewal rights..." At the 1985 constitutional convention, this section was amended to leaseholds of more than fifty-five years. The present Section 3 goes on to say that "[a]ny land transaction in violation of this provision shall be void."

Sections 4 and 5 of Article XII of the Constitution define who is a person of Northern Marianas descent and when a corporation is considered a person of Northern Marianas descent, respectively.

Section 6 of Article XII of the Constitution provides, in part, that "[a]ny transaction made in violation of Section 1 shall be void ab initio"

The constitutional question was raised by the defendant (appellant) in the Third Affirmative Defense to his Answer that "[a]ny agreement between Attorney Fennell and Antonia C. Villagomez or between Attorney Fennell and Marian Aldan-Pierce, for the purpose of circumventing the restrictions on land alienation contained in Article XII of the Constitution of

342

the Commonwealth of the Northern Mariana Islands is illegal, void, and against public policy." This position was continually advanced by the defendant in his pleadings, including his response to the plaintiff's motion for summary judgment. Despite this position, the trial court treated this case as an ordinary one; however, the following authorities require the trial court to do otherwise.

## CASES INDICATING CONSTITUTIONAL, PUBLIC, OR COMPLEX ISSUES SHOULD BE TRIED

In <u>Pacific American Fisheries v. Mullaney</u>, 191 F.2d 137 (9th Cir. 1951), where the constitutionality of the Alaska statute imposing a higher license fee for non-resident commercial fishermen than for resident fishermen was the issue, the court held:

> Because of the importance of the issues presented in this suit, we think that it was not one to be disposed of by summary judgment, even if proper motion for such judgment had been made or proper opportunity accorded for appropriate showing by affidavit or otherwise... (citing <u>Kennedy v. Silas Mason Co.</u>, 334 U.S. 249)

In <u>Kennedy v. Silas Mason Co.</u>, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948), involving the overtime provisions of the Fair Labor Standards Act, the court stated:

> We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however

343

salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice

We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present in a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of judicial process to provide. (underscoring added)

In Hawaii Housing Authority v. Castle, 653 P.2d 781 (1982), the Supreme Court of Hawaii decided that the constitutionality of the eminent domain statute would not be decided without a trial, in the following language:

The Supreme Court of the United States said over 30 years ago [b]ut summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record of deciding issues of far-flung import...

Our decisions have constantly been in accordance with that statement [citing a number of Hawaii cases] Since, as we have said, the case is, with respect to the "public use" issue, one of first impression, we are unwilling to decide the constitutionality of the statute without a trial, pursuant to the statute, being held

344

In _Eccles v. People's Bank of Lakewood Village, Cal._, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), the court, in ruling upon a membership in the Federal Reserve System, decided:

> Its [the bank's] claims of injury were supported entirely by affidavits. Judgment on issues of public moment based on such evidence, not subject to probing by judge and opposing counsel, is apt to be treacherous. Caution is appropriate against the subtle tendency to decide public issues free from the safeguards of critical scrutiny of the facts through use of a declaratory summary judgment. Modern equity practice has tended away from a procedure based on affidavits and interrogatories, because of its proven insufficiencies.

Complex cases where the questions are not, and often cannot be, conveniently isolated as pure questions of law, are not appropriately disposed of by summary judgment, as in this case. _Elliott v. Elliott,_ 49 F.R.D. 283 (S.D. N.Y. 1970).

Professor Moore states in his treatise, 6 Moore's Federal Practice, ¶ 56.15 [1.-0] at 56-398 ((2d ed. 1984), that:

> The motion for summary judgment may be made by any party in any type of action. But by its nature summary judgment is apt to be ill-adapted to cases of a complex nature or to those that involve constitutional or other large public issues, which often need the full exploration of trial. (underscoring added)

#### RIGHT TO TRIAL WHERE GENUINE ISSUES EXIST

Reading the pleadings carefully, it is clear that, apart from the complex legal issues involved, the factual issues are equally complex, and these factual issues have not been fully brought out in the course of the

345

proceedings. The trial court, in an endeavor to resolve this case, simply looked at the bare legal issues, without determining if there were any genuine issues still to be resolved. To this extent, I feel that the trial court was in error.

The plaintiff alleged in the complaint and other pleadings a simple set of facts, reduced to the legal issues of trust and agency relationships. But defendant viewed the situation differently. He sees this case as being one of:

(a) an attempt by two attorneys of non-Northern Marianas descent to acquire freehold interest in the lands of the Commonwealth for resale to non-Marianas citizens contrary to the Constitution, hereinafter referred to as the "scheme," and

(b) by the vehicle of option agreements and by using persons of Northern Marianas descent as intermediaries or "straw persons," to carry out the scheme.

Thus, there were patent disagreements as to the facts and their significance. Looking at the defendant's position in the best possible light, the factual issues that may be present or implied are the following:

a. What was the intent and motive of those who devised the scheme?

b. Why was the scheme devised when long-term leases were permitted by the Constitution?

c. How prevalent is the use of the scheme in the Commonwealth?

d. How much control did the two attorneys exercise over the "straw persons" of Northern Marianas descent in the carrying out of the scheme?

346

e. Was it the intent of the parties to the scheme that the intermediaries have full control or rights over the acquisition and disposition of the acquired lands, or were the intermediaries simply to be inert unobjecting persons who could be easily manipulated for some valuable consideration?

f. Did the owners of the lands in question (Northern Marianas citizens) fully understand the nature of the transaction that they were entering into, or were they taken advantage of by virtue of their lack of knowledge or sophistication as to what the entire scheme was about?

In Colby v. Klune, 178 F.2d 872 (2d Cir. 1949), a stockholder's suit, the court declared

> We have in this case one more regrettable instance of an effort to save time by an improper reversion to "trial by affidavit," improper because there- is involved an issue of fact, turning on credibility Trial on oral testimony, with the opportunity to examine and cross-examine witnesses in open court, has often been acclaimed as one of the persistent, distinctive, and most valuable features of the common-law system For only in such a trial can the trier of the facts (trial judge or jury) observe the witnesses' demeanor, and that demeanor – absent, of course, when trial is by affidavit or deposition – is recognized as an important clue to witness' credibility When, then as here, the ascertainment (as near as may be) of the facts of a case turns on credibility, a triable issue of fact exists, and the granting of a summary judgment is error. (underscoring added)

In Toebelman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016 (3d Cir. 1942), the court stated.

347

Upon a motion for a summary judgment, it is no part of the court's function to decide issues of fact, but solely to determine whether there is an issue of fact to be tried....All doubts as to the existence of A genuine issue as to a material fact must be resolved against the party moving for a summary judgment. (underscoring added)

In an action challenging gasoline price increases under the Emergency Petroleum Allocation Act; the court, in McWhirter Distributing Co., Inc. v. Texaco, Inc., 668 F.2d 511 (1981), held:

If the nonmoving party has raised by pleadings a genuine issue of material fact and the evidentiary matter in support of the motion for summary judgment does not establish the absence of such issue, summary judgment must be denied even though no opposing evidentiary matter is presented.... (citing cases)

The very nature of a controversy may render summary judgment inadvisable. "[S]ummary procedures should be used sparingly...where motive and intent play leading roles..." (citing Poller v. Columbia Broadcasting, 388 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962))

In Peckham v. Ronrico Corporation, 171 F.2d 653 (1st Cir. 1948), the court, in ruling upon a suit based on alleged fraud of insolvent debtor in furnishing capital for corporation of which defendants were stockholders, declared:

It is well settled that "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial" (case citation omitted) A litigant has a right to trial where there is the slightest doubt as to the facts (case citations omitted) (underscoring added)

348

The defendant in this case filed a request for jury trial on the same day that he filed the answer.

While it is true that the rule on summary judgment does not infringe upon the right to jury trial, in _Whitaker v. Coleman_, 115 F.2d 305 (1940), involving a suit against the owner and driver of an automobile for death damages, the Fifth Circuit Court of Appeals explained:

> The invoked [summary] procedure, valuable as it is for striking through sham claims and defences which stand in the way of a direct approach to the truth of the case, was not intended to, it cannot deprive a litigant of, or at all encroach upon, his right to a jury trial....
>
> To proceed to summary judgment it is not sufficient then that the judge may not credit testimony professed on a tendered issue. It must appear that there is no substantial evidence on it, that is, either that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without legal probative force....
>
> Summary judgment procedure is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiry and determining whether such evidence exists. (underscoring added)

349

## ENTITLEMENT TO JUDGMENT AS A MATTER OF LAW

The trial court found that there were no genuine issues of fact either as to the allegations in plaintiff's complaint or any of defendant's affirmative defenses and counterclaims.

In Shahid v. Gulf Power Co., 291 F.2d 422 (5th Cir. 1961), an action against electric power supplier for fire damage to hotel, Judge Rives stated.

> Before rendering summary judgment the district court must determine both (1) that there is not a genuine issue as to any material fact and (2) that the moving party is entitled to a judgment as a matter of law...Requisite (2) does not automatically follow from requisite (1).

Judge Rives quoted with approval the ruling in Palmer v. Chamberlin, 191 F.2d 532, 27 A.L.R.2d 416 (5th Cir. 1951),

> ...before rendering judgment the court must be satisfied not only that there is no issue as to any material fact, but also that the moving party is entitled to a judgment as a matter of law  where, as in this case, the decision of a question of law by the Court depends upon inquiry into the surrounding facts and circumstances, the Court should refuse to grant a motion for a summary judgment until the facts and circumstances have been sufficiently developed to enable the Court to be reasonably certain that it is making a correct determination of the question of law. (underscoring added)

## THE "RELUCTANT APPROACH"

For a case of this importance, there appears to have been a marked desire by the court to expedite the resolution of the cause  A number of technical objections were raised by the plaintiff's counsel to frustrate the attempt by the defendant to obtain sufficient time to prepare his case. Obeisance to the technicalities of the rules of the court was quite evident in the court's rulings.

In S. J. Groves & Sons Company v. Ohio Turnpike Commission, 315 F.2d 235 (6th Cir. 1962), cert. denied, 375 U.S. 284 (1963), where a contractor brought suit against the Turnpike Commission for the Construction of a turnpike, Judge Miller commented:

> This Court has on several occasions expressed the view that a trial judge should be slow in disposing of a case of any complexity on a motion for summary judgment, that while such a judgment widely used is a praiseworthy and timesaving device, yet such <u>prompt dispatch of judicial business is neither the sole nor the primary purpose for which courts have been established, and that a party should not be deprived of an adequate opportunity to fully develop the case by witnesses and a trial, when the issues involved make such procedure the appropriate one</u>. (underscoring added)
>
> It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts, or whether an estoppel or a waiver of certain rights admitted to exist should be drawn from such facts. Under such circumstances, the case is not one to be decided by the Trial Judge on a motion for summary judgment. (cases cited) ....

351

## CONCLUSION

From the foregoing, it is my opinion that the summary judgment for the plaintiff be vacated and that the case be remanded to the Trial Court for a jury trial.

DATED: December 28, 1987

RICHARD I. MIYAMOTO
Designated Judge