LOCAL UNION NO. 4343 OF the
UNITED MINE WORKERS OF
AMERICA, Plaintiff,

v.

OLD BEN COAL CO., Defendant.

No. 90–25–C.

United States District Court,
S.D. Indiana,
Evansville Division.

Feb. 28, 1991.

David O. Kelley, Boonville, Ind., for plaintiff.

Arthur D. Rutkowski, Bowers Harrison Kent & Miller, Evansville, Ind., for defendant.

## MEMORANDUM

BROOKS, Chief Judge.

### I. INTRODUCTION

On February 21, 1990 the plaintiff filed its Verified Complaint and Application for "Preliminary And Permanent Injunction, Enforcement of Arbitration Award and Damages." Jurisdiction over this case is conferred by the Labor Management Relations Act, 29 U.S.C. § 185.

The Defendant moved for Dismissal on March 6, 1990. On the same day the Court conducted a hearing on Plaintiff's Request for Preliminary and Permanent Injunction. At that hearing the parties agreed that all motions could be presented to the Court through briefing and that the defendant's motion for dismissal would be treated as one for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56 governs summary judgment and subsection (c) states that "the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ Summary judgment is not intended to be a substitute for a trial on the disputed facts, rather it is intended to dispose of those cases which have no genuine issue of material fact to litigate. *Federal Savings and Loan Ins. Corp. v. Williams*, 599 F.Supp. 1184 (D.C.Md.1984). By granting a motion for summary judgment the court is concluding that, based upon the evidence which the court has available, no reasonable jury could return a verdict favoring the party against whom the summary judgment has been granted. *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985).

■ The purpose of Rule 56 is to avoid unnecessary protracted litigation. Summary judgment allows the court to dispose of meritless claims before becoming entrenched in frivolous and costly trials. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54 (7th Cir.1987). Although, if disposing of a summary judgment motion requires as much time as a full trial on the merits, Rule 56 no longer serves the purpose of economizing the court's and litigants' time, and as such, should be denied. *Elliott v. Elliott*, 49 F.R.D. 283 (D.C.N.Y.1970); 10 Wright and Miller, Federal Practice and Procedure, Summary Judgment Proceedings § 2728 at 557–558.

■ When reviewing a motion for summary judgment courts must give the benefit of all inferences to the party opposing the motion and examine the record in the light most favorable to that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) and *Illinois v. Bowen*, 808 F.2d 571 (7th Cir. 1986).

■ A party opposing summary judgment, who bears the ultimate burden of proof at trial, may not rely solely on its pleadings, but must affirmatively show the court that a genuine issue of material fact exists to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Bare assertions are not sufficient to survive summary judgment, as the Supreme Court has stated that a party must show more than a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ A court is to act with caution when granting a motion for summary judgment and may deny the motion when reason exists to believe that the better course is to proceed to a full trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ This does not mean that a court should be reluctant to grant summary judgment when the record reflects that no genuine issue of material fact exists. The purpose of summary judgment procedure is to eliminate trial in cases where trial is unnecessary and would result in delay and expense, and, with an ever-increasing burden upon the judiciary, persuasive reasons exist for utilization of summary judgment procedures whenever possible; courts therefore will not strain to find the existence of a genuine issue of material fact where none exists. The Supreme Court has stated that:

Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole which are designed to secure the just, speedy and inexpensive determination of every action.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the

rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 326–327, 106 S.Ct. at 2555.

## III. THE DISPUTE

The parties herein have entered into a collective bargaining agreement, the Bituminous Coal Wage Agreement of 1988. Pursuant to that agreement the parties are to submit certain disputes to arbitration.

In May, 1989 Old Ben Coal Company (Company) replaced its sixty yard bucket on the Number Two, 1370 dragline with a seventy-two and one-half yard bucket. The United Mine Workers of America, District 11, Local Union 4343 (Union) filed a grievance contending that all buckets which exceed 65 yards must be manned by four employees and that Company had refused to add a fourth person to the preexisting three person crew.

On October 12, 1989 Arbitrator David L. Beckman issued an Opinion and Award favoring Union. In that Award, Arbitrator Beckman found that Company should have assigned a fourth employee to the 1370 dragline and ordered that Union be compensated back pay for the period of time in which only three employees manned the dragline. In addition, he stated that "[f]or the future, management is hereby directed to use a four-person crew on the 1370 dragline at any time it is using the 72.5–yard bucket." See Opinion and Award, Case No. 11–89–26, October 12, 1989.

The instant controversy began in February, 1990 when Company gave Union notice that it intended on reducing the number of employees from four to three on the 1450 dragline, after replacing its seventy-two and one-half yard bucket with a sixty-five yard bucket. Union filed this action claiming that the prior arbitration award is effective, applies herein, and should be enforced by this Court.

Company has two defenses. First, it contends the prior award is not enforceable herein and second, even if enforceable, the size of the bucket in question is only sixty-three and one-half yards; a minimum of sixty-five yards being required before Company has to assign four employees.

## IV. APPLICABLE LAW AND ANALYSIS

■ Unquestionably, this Court may enforce an arbitration award which is not complied with. It is equally true that district courts must be careful when exercising this authority, so as to avoid interfering with the arbitration process. This is particularly true when a party seeks prospective application of an award.

> Only when an arbitral award is both clearly intended to have a prospective effect and there is no colorable basis for denying the applicability of the existing award to a dispute at hand, will a court order compliance with the award rather than require the parties to proceed anew through the contract grievance procedure.

*Local 1545 v. Inland Steel Coal Co.,* 876 F.2d 1288, 1294 (7th Cir.1989), citing *Derwin v. General Dynamics Corp.,* 719 F.2d 484 (1st Cir.1983). In *United Electrical Radio and Machine Workers of America v. Honeywell, Inc.,* 522 F.2d 1221 (7th Cir. 1975), the Seventh Circuit Court of Appeals reiterated the need for courts to leave the arbitration process alone; however, it also recognized that in some instances judicial intervention may further national arbitration policy. *Honeywell* at 1225. In *Honeywell,* factors which have bearing on whether an arbitration award should have prospective application were discussed.

■ One factor which the Court in *Honeywell* set out concerns the similarity of facts between the prior arbitration and the instant case. The facts must be "substantially identical" before a federal court can entertain prospective enforcement. Closely "intertwined with this factual identity element is also the requirement that the company's conduct constitutes wilful and persistent disregard of the arbitration awards." *Honeywell* at 1295. The *Honeywell* Court found that three violations within a ten year period did not rise to the level of "wilful and persistent disregard of the arbitration awards." In the case at bar the

factual identity element has not been achieved. The prior arbitration, upon which the plaintiff is relying, concerned the replacement of a sixty yard bucket with a seventy-two and one-half yard bucket. The instant controversy concerns the replacement of a seventy-two and one-half yard bucket with a sixty-five yard bucket. There is a significant difference between a sixty-five yard bucket and a seventy-two and one-half yard bucket. The factual difference between the two buckets is acknowledged in the Beckman Arbitration Opinion, wherein it is stated that while the seventy-five and one-half yard bucket will always exceed the sixty-five yard minimum capacity, the sixty-five yard bucket will never exceed it and there is reason "to believe that it would most often be less than 65 yards."

Added to this is the controversy over the size of the bucket. The defendant contends that the bucket is smaller than sixty-five yards and has submitted affidavits to support its claim. The plaintiff, of course, argues that the bucket is sixty-five yards.

In any event, there are at least two factual disputes: (1) whether a bucket rated at sixty-five loaded capacity falls within the provision requiring a four person crew and (2) what is the size of the bucket on dragline 1450. Such questions must be presented to arbitration.

■ In addition to the factual impediments to this Court rendering a decision sub judice, there is a legal obstacle: the arbitration award does not encompass the instant dispute.

It is clear that Arbitrator Beckman intended for his award to be prospective; however, the scope of his award is narrow. Again, he directed the defendant "to use a four-person crew on the 1370 dragline at any time it is using the 72.5–yard bucket." This order does have prospective authority; that is, if Company were to reduce the number of employees on the 1370 dragline while it is equipped with the seventy-two and one-half bucket, it would be unnecessary for Union to resort to arbitration. This same may also be true if Company were to have less than a four person crew

on any dragline using a seventy-two and one-half capacity bucket.

In *Local 1545 v. Inland Steel Coal Co.*, 876 F.2d 1288 (7th Cir.1989) a similar Union claim was rejected because the arbitrator's award did not include language prohibiting future "like violations."

The fact that neither [of the prior arbitration] awards contain language directing that they apply to "like violations" strongly indicates that the arbitrators did not want the awards to apply prospectively. The conclusion that the awards were not intended to apply prospectively is further strengthened by the language of Article XXIII(c)(4) of the 1984 Agreement which provides "[t]he arbitrator's decision shall be final and shall govern only the dispute before him."

The agreement referred to is the National Bituminous Coal Wage Agreement of 1984, the same agreement that the parties are signatories to herein. It is the conclusion of the Court that Arbitrator Beckman did not intend for his award to apply to the dispute at bar.

Accordingly, for the reasons above, the Defendant's motion for summary judgment is GRANTED and the Plaintiff's request for injunctive relief is DENIED.

IT IS SO ORDERED.